**SOLOUKI | SAVOY, LLP**
316 W. 2nd Street, Suite 1200
Los Angeles. California 90012
Telephone: (213) 814-4940
Facsimile: (213) 814-2550
Grant Joseph Savoy, Esq. (SBN: 284077)
grant@soloukisavoy.com
Shoham J. Solouki, Esq. (SBN:278538)
shoham@soloukisavoy.com

**LAW OFFICES OF HOWARD PROSSNITZ**
Howard B. Prossnitz, Esq. (*pro hac vice motion to be filed*)
1014 Ontario Street
Oak Park, IL 60302
Telephone: (708) 203-5747
prossnitzlaw@gmail.com

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MEGAN McCORVEY, | ) | |
| | ) | |
| Plaintiff, individually and as | ) | No. |
| a representative of all persons | ) | |
| similarly situated, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **PLAINTIFF'S CLASS** |
| | ) | **ACTION COMPLAINT** |
| NORDSTROM, INC., and | ) | |
| NORDSTROM 401K PLAN | ) | |
| RETIREMENT COMMITTEE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

///
///
///

1

PLAINTIFF'S CLASS ACTION COMPLAINT

1.      Plaintiff Megan McCorvey, individually, and as a representative of a class of participants and beneficiaries of the Nordstrom 401K Plan (Plan or Nordstrom Plan), brings this action under 29 U.S.C. §§ 1132(a)(2) and (3), and on of behalf of the Plan against defendants Nordstrom Inc. (Nordstrom) and Nordstrom 401K Plan Retirement Committee (Retirement Committee) for breach of fiduciary duties.

**Introduction**

2.      401(k) defined contribution plans such as the Nordstrom Plan have become America's primary retirement vehicle instead of traditional pension plans where the risk of poor investment performance and high fees was on the employer.  Here, it is the employees' retirement monies which suffer if the Plan is saddled with high fees and underperforming assets.

3.      With $2.6 billion in assets, the Nordstrom Plan is one of the largest plans in the country.  It ranks in the top .1 % of over 500,000 401(k) plans in terms of the amount of its assets.[1]   It has failed to use the leverage from its size to get reasonable fees for Plan participants.

4.      The marketplace for retirement plan services is established and competitive. Large multi-billion dollar plans serving over 70,000 participants such as the Nordstrom Plan have enormous bargaining power to obtain low cost administrative and investment management services.  Indeed, the overall trend in 401(k) plan administrative fees has been markedly downward.  From 2006 to 2015, the estimated annual administrative cost of 113 large plans surveyed fell almost in one-half according to the NEPC 2015 Defined Contribution Plan & Fee Survey"

---

[1] *The BrightScope/ ICI Contribution Plan Profile: A Close Look at 401(k) Plans,2014* at 11. (Dec. 2016), available at https://www.ici.org/pdf/ppr_16_dcplan_profile_401k.pdf.

2

What A Difference a Decade Makes at 1 (Oct. 2015)2.  In contrast, Nordstrom Plan fees administrative fees increased by thirty percent from 2011 to 2016.

5.     Nordstrom, the Plan sponsor, was a fiduciary to the Plan.  It was obligated to act for the exclusive benefit of Plan participants.  The duties of an ERISA fiduciary have been described as the "highest known to the law", *Howard v. Shay*, 100 F. 3d. 1484, 1488 (9th Cir. 1996) quoting *Donovan v. Bierwirth*, 680 F. 2d 263, 272 n.8, (2d Cir.), cert. denied,  459 U.S. 1069 (1982).

6.     In breach of these duties, Nordstrom failed to adequately and prudently manage the Plan.  It allowed unreasonable fees to be incurred by participants; it did not act prudently to lower costs; it failed to use lower cost investment vehicles; and it made inadequate disclosures on fees.

7.     In determining whether Nordstrom fulfilled its fiduciary duties,  Nordstrom is judged by the standard of how a prudent financial expert familiar with investment industry practices and fees would act.

8.     To remedy these breaches of fiduciary duty, Plaintiff brings this action to enforce Nordstrom's liability under 29 U.S. C. § 1109 (a), to make good to the Plan all losses resulting from its breaches of fiduciary duties, and to restore to the Plan any lost investment returns.  In addition, Plaintiff seeks to reform the Plan to comply with ERISA and to prevent further breaches of fiduciary duties and other such equitable and remedial relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

9.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this is an action under 29 U.S.C. §§ 1132(a)(2) and (3) for which federal district courts have exclusive jurisdiction under 29 U.S.C. § 1132(e)(1).

---

2https://cdn2.hubspot.net/hubfs/2529352/Blog/2015_10_nepc_2015_defined_contribution _plan_and_fee_survey-_what_a_difference_a_decade_makes_copy1.pdf?t=1486746354842.

10.    This district is the proper venue for this action under 29 U.S.C. §1132(e)(2) and 29 U.S.C. § 1391(b)(2) since a substantial part of the events or omissions giving rise to the claim occurred here.

## PARTIES

11.    Nordstrom is a publicly traded New York Stock Exchange company that owns and operates 344 department stores in forty states as well as an e-commerce business.   As of January 2016, it had annual revenues in excess of $14 billion and gross profits close to $6 billion.  In 2015, it had 72,500 employees.

12.    The Nordstrom 401K Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and §1002(34).

13.    Nordstrom is the Plan Sponsor under 29 U.S.C. § 1002(16)(B).

14.    As required by 29 U. S. C. §1102(a)(1), the Plan is established and maintained by a written plan document.

15.    As of December 31, 2016, the Plan had assets of $2.8 billion and 74,304 active participants.

16.    The Plan Administrator is the Nordstrom 401K Plan Retirement Committee.

17.    Nordstrom and the Retirement Committee controlled which investment options were available in the Plan.

18.    Recordkeeping and administrative services for the Plan are provided by Mercer HR Services, LLC.

19.    Plaintiff Megan McCorvey is a resident of Carson, California.  She worked at Nordstrom from September 2010 to August 2012; December 2012; and May 2013 to June 2015.  She was a participant in the Plan from 2010 to 2015.

## ERISA FIDUCIARY STANDARDS

20.    ERISA imposes strict fiduciary duties of loyalty and prudence upon Nordstrom and the Retirement Committee as fiduciaries of the Plan.  The statute

states, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims."

21.     Under ERISA, fiduciaries that exercise control or authority over plan assets, and the selection of service providers, must act prudently at all times and act solely in the interest of plan participants.

22.     ERISA fiduciary duties must be performed "with an eye single to the interests of the participants and beneficiaries". *Donovan v. Bierwirth*, supra  at 271,  citing *Restatement of Trusts 2d* § 170 (1959).

## FACTS

23.     In a defined contribution plan, such as the Nordstrom Plan, the plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses … which may be allocated to such participant's account". 28 U.S.C. §1002(34).   A participant is limited to investing in options made available in the plan.  Therefore, the selection of menu options by the Plan fiduciaries and the amount of fees imposed upon individual accounts is crucial in determining how much money a participant has at retirement.

24.     Seemingly small differences in fees can lead to vastly different outcome at retirement.   For example, a 1% difference in fees can mean 28% less in retirement assets over a thirty-five year period, U.S. Dept. of Labor, A Look at 401(k) Plan

Fees, (August 2013) at 1-2,

`https://www.dol.gov/ebsa/publications/401k_employee.html.`

25.    Low fees are important in selecting which investments a plan offers to

participants.   Funds with high fees tend to perform worse than funds with low

fees.   Morningstar determined that expense ratios are the best predictor of  future

fund performance.   Specifically, it looked at fund performance from 2010 to 2015

and found:

> … in U.S. equity funds,  the cheapest quintile has a total-
> return success rate of 62% compared with 48% for the
> second-cheapest quintile, then 39% for the middle
> quintile, 30% for the second priciest quintile, and 20%
> for the priciest quintile.  So, the cheaper the quintile, the
> better your chances….The pattern was pretty much the
> same in other asset classes.[3]

26.    Further, a Morningstar study released in 2015 showed that index funds

outperformed actively managed funds especially over a ten-year time period.[4]

27.     Therefore, fees are of critical importance to a fiduciary's prudent

investment menu selection.   There is no reason to choose a higher cost fund unless

it can be shown that higher cost fund will be an exception to the general rule and

will outperform its benchmark over time after its high fees are deducted.

28.    As of December 31, 2014, the Nordstrom Plan had a total of $2.8 billion in

assets. The major holdings and investment options in the Plan which accounted for

$2.6 billion of the total $2.8 billion in Plan assets are set forth below:

///

///

---

[3]  http://news.morningstar.com/articlenet/article.aspx?id=752485
[4]  https://www.cnbc.com/2015/06/26/index-funds-trounce-actively-managed-funds-
study.html.

| Primary Investment Options | 2014 Amount |
|---|---|
| Nordstrom Target Date Retirement Funds[5] | $1.1 billion |
| Nordstrom Inc. Common Stock | $373.6 million |
| Putnam Stable Value Fund | $199.5 million |
| Voya Large Cap Growth | $ 90.3 million |
| Wm. Blair Small Mid Cap Growth | $135.6 million |
| American Funds Europacific Growth | $183.7 million |
| Dodge & Cox Stock Fund | $184.9 million |
| Neuberger & Berman Genesis | $113.5 million |
| PIMCO Total Return | $92.7 million |
| Vanguard Instl Index | $147.8 million |
| **Total** | **$2.6 billion** |

## The Plan's Excessive Administrative and Record Keeping Fees

29.     The United States Supreme Court held in Tibble v. Edison International, 135 S. Ct. 1823 (2015), that plan fiduciaries have an ongoing duty to maintain and monitor the operation of a plan.

30.     Recordkeeping is needed for every retirement plan.  There are numerous vendors who can provide high quality service to a plan such as the Nordstrom Plan. These vendors strenuously compete against each other by offering the lowest price for the best service.

31.     Nordstrom had the bargaining power to obtain and maintain low fees.  The Plan had significant leverage to procure high quality management and administrative services at a low cost.

---

[5]  Nordstrom does not list the amount invested in each Target Date fund, or the total dollar amount invested in all Target Date funds.  Rather, it lists the fair value of the 365 separate investments held in all of the Target Date funds which is the source of the $1.1 billion number.

7

32.     Excess fees come directly out of the pockets of Plan participants who earn less on their retirement money.

33.     The Nordstrom Plan received from the BrightScope rating service an overall  score of only 58 compared to an average score of 77 for its peer group. The top BrightScope rating for peer plans is 89.   This difference means that sixteen years of additional work was required by Nordstrom employees to reach the same level of savings as the top rated peer plan participants.  Nordstrom Plan participants lost savings of $177,622 per participant, or over $12 billion collectively, as compared to the highest ranking peer plan.

34.     BrightScope also rates the Nordstrom Plan as a "High Fees" Plan when compared to same size plans with assets of more than $500 million.

35.     The administrative fees and trustee fees paid by the Plan from 2011 to 2016 are as follows:

|  | **Fees** | **No. Participants With Acct. Balances** | **Cost Per Participant** |
| --- | --- | --- | --- |
| 2011 | $3,799,000 | 57,078 | $66.56 |
| 2012 | $3,532,000 | 63,521 | $55.60 |
| 2013 | $4,671,000 | 65,106 | $71.74 |
| 2014 | $4,818,000 | 70,104 | $68.72 |
| 2015 | $4,460,000 | 75,436 | $59.12 |
| 2016 | $4,695,000 | 77,389 | $60.66 |

36.     These administrative fees are excessive and double the amount of reasonable fees.  A reasonable administrative and recordkeeping fee per person is $30.  The extra costs incurred by Nordstrom participants from 2011 to 2016 were $13.7 million.

37.    As noted above, the general trend among large 401(k) plans over the past decade has been for administrative fees to be reduced in half, but Nordstrom fees actually went up from $3,799,000 in 2011 to $4,695,000 in 2016.

**The Plan's Murky Disclosures on Administrative Expenses**

38.    Nordstrom was required to send an annual disclosure to Plan participants concerning administrative fees.  It failed to specifically state the dollar amount it charged Plan participants for Plan administration expenses in its annual notice on fees.   The October 2014 Expense and Investment Notice attached as Exhibit One has this to say about Plan administrative expenses:

> Plan administrative expenses represent the cost for general administrative services that are necessary for the day-to-day operation of your Plan.    These services include Plan recordkeeping and trustee/custodial services and may include other administrative services such as preparation and distribution of Plan information and materials, and legal, accounting and auditing services.
>
> As provided by your Plan, **your account may be charged** with a portion of these administrative expenses.  To the extent your account is charged, your Plan allocates these administrative expenses as a "per capita" charge (i.e. each participant pays the same amount regardless of account balance). …
>
> As a result of many factors, which may include payments received from the annual operating expenses of your Plan's investment options that **may be applied** to offset administrative expenses, daily fluctuations in participant account balances, or variable administrative services expenses – **the amount deducted** from your account for plan administrative expenses **may vary**. (Emphasis supplied.)

This disclosure fails to clearly tell participants if, in fact, their accounts will be charged for plan administrative expenses, and if so, how much.[6]

39.    The Plan, as a whole, paid administrative expenses of close to $26 million from 2011 to 2016, and this money directly reduced the amount of participant savings.

### Plan's Inadequate Disclosure Concerning Revenue Sharing

40.    Revenue sharing is the practice whereby mutual funds or other investments owned by the Plan pay back to the Plan part of the money the funds charge to investors for operating expenses.  The payments are supposedly used to offset Plan record keeping and administrative costs.

41.    The problem is that if the amounts remitted through revenue sharing are greater than the actual and reasonable costs of record keeping by the Plan, the revenue sharing payments become kickbacks for including a fund in the Plan's list of menu options.

42.    The annual fee notices of the Nordstrom Plan fail to adequately disclose whether Plan investment funds pay money back to the Plan for administrative expenses, and how much is paid back.

43.    However, according to the Annual Reports of the Plan (Form 5500s) filed with the U.S. Department of Labor, service providers to the Plan, did receive indirect payments from sources other than the Plan or its sponsor.   If so, these payments are a form of revenue sharing.  Yet. Nordstrom does not disclose to Plan participants the amount of such revenue sharing payments, nor how the payments were applied.  Without this information, it is not possible to determine whether the revenue sharing amounts were reasonable in relation to administrative costs.

---

[6]  Prior to filing suit, Ms. McCorvey requested copies of her account statements.  She was advised that they are no longer available.  Only Participant Valuation Summaries were provided to her.  These Summaries do not disclose administrative and record keeping fees.

10

**Excessive Operating Fees of Plan Investment Options**

44.     The annual operating fees charged for many of the Plan's investment options were substantially higher than reasonable management and operating fees of comparable funds, both index and actively managed funds.

45.     $1.9 billion of the Plan's assets were in investments costing on average at least 42 basis points ("bps") in annual operating fees (100 basis points equal 1 %). These fees were up to 16 times higher than comparable index funds, and up to 2.7 times higher than comparable actively managed funds.  Thus, the Nordstrom Plan fees were excessive.

46.     The high fee funds in the Nordstrom Plan could have been easily replaced by lower cost index funds, target retirement funds, or actively managed funds.  The replacement funds had the same investment objectives as the Plan funds, and similar, if not better, performance records.  Indeed, many of the funds chosen for the Plan were newly formed and did not have extensive track records.  Of 21 funds in the Plan as of October 2016, only 4 had performance records going back 10 years.  Only 5 of 21 funds had track records going back 5 years.

47.     The following table shows readily available lower cost funds:

| Plan Investment Options | Plan bps | Available          Lower Cost Funds | bps |
|---|---|---|---|
| Nordstrom Target Date Retirement Funds | 42 bps[7] | Vanguard Institutional Target Date Funds (2020 to 2060)[8] | 9 bps |
| Voya Large Cap Growth | 59 bps | Vanguard Growth Index Fund Institutional Shares | 5 bps |

---

[7]  42 bps is the average cost of the Nordstrom Target Date Retirement Funds.

[8]  See list of Vanguard Institutional funds attached as **Exhibit Two**.

| | | (VIGIX)<br><br>Vanguard US Growth Admiral Shares (managed fund) (VWUAX) | 32 bps |
|---|---|---|---|
| Wm. Blair Small Mid Cap Growth | 85 bps | Vanguard Mid Cap Index Admiral Shares (VIMAX) | 6 bps |
| | | Vanguard Mid Cap Growth (managed fund) (VMGRX) | 36 bps |
| American Funds Europacific Growth | 50 bps | Vanguard Total International Stock Index Fund (VTSNX) | 9 bps |
| | | Vanguard International Growth Fund Admiral Shares (managed fund)(VWILX) | 33 bps |
| Dodge & Cox Stock Fund | 52 bps | Vanguard Value Index Fund Institutional Shares (VIVIX) | 5 bps |
| | | Vanguard US Value (managed fund) (VUVLX) | 23 bps |
| Neuberger & Berman Genesis | 80 bps | Vanguard Small Cap Index Fund Institutional Shares (VSCIX) | 5 bps |
| | | Vanguard Strategic Small Cap Equity (managed | 29 bps |

12

| | | fund)(managed fund)(VSTCX) | |
|---|---|---|---|
| PIMCO Total Return | 46 bps | Vanguard High Dividend Yield Index Fund (VHDYX) | 15 bps |
| | | Vanguard Growth and Income Fund Admiral Shares (managed fund)(VGIAX) | 23 bps |
| Weighted average | 50 bps | | |

48.    With respect to the Nordstrom Target Retirement Funds which accounted for $1.1 billion of Plan holdings, the Plan could have cut expenses by 33 bps per year or $3.6 million a year or nearly $22 million over six years by using Vanguard Target Funds with annual costs of 10 bps.  In fact, in 2011,  Vanguard came out with an even less expensive series of Target Retirement Trust Plus in the form of collective trusts which have an expense ratio of only 6 basis points.

49.    Similarly, on the $800 million invested in the Voya Large Cap Growth Fund, Wm. Blair Small Mid Cap Growth Fund, American Funds Europacific Growth Fund, Dodge & Cox Stock Fund, and Neuberger & Berman Genesis Fund, and PIMCO Total Return Fund, the savings would have been $24 million over six years with index funds.  The annual cost differential was as follows:

| Fund in Nordstrom Plan | Amount Held in Plan | Annual Savings with Vanguard Index Funds | Annual Savings With Vanguard Managed Funds |
|---|---|---|---|
| Voya | $90.3 million | $488,000 | $244,000 |
| Wm. Blair | $135.6 million | $1,071,000 | $644,000 |
| Europacific | $183.7 million | $753,000 | $313,000 |
| Dodge & Cox | $184.9 million | $739,000 | $536,000 |
| Neuberger | $113.5 million | $851,000 | $579,000 |

| PIMCO | $92.7 million | $287,000 | $213,000 |
| **Totals** | **$880.7 million** | **$4,190,000** | **$2,549,000** |

50.    Thus, some $46 million in extra costs was paid over six years between the excess fees of the Target Retirement Funds and the mutual funds referenced in paragraph 48.   Further, if the $46 million lost in excess fees had been invested in an S and P 500 index fund which have returned 112% over the last six years, the Plan would have earned are an additional $46 million.  In other words, there are very large lost opportunity costs due to the excess fees incurred.

**Excessive fees of Plan's mutual funds versus separate accounts**

51.    Plans such as the Nordstrom Plan which have over $1 billion in assets have the option of hiring investment advisers directly to separately manage accounts for them designed to meet the specific needs of the Plan.  Plans can have these separate managed accounts instead of buying mutual funds.  Separately managed accounts can use the same investment style and same manager as more expensive mutual funds.

52.    As explained by the U.S. Department of Labor in Study of 401(k) Plan Fees and Expenses, (April 13, 1998), https://www.dol.gov/sites/default/files/ebsa/researchers/analysis/retirement/401kRept.pdf, § 2.4.1.3:

> Very large plans can achieve even greater management savings by establishing **separate accounts** for their 401(k) assets.  In such an arrangement, the sponsor can define its own investment objectives and target portfolios.   The investments are administered either through an external investment manager or in conjunction with the sponsor's DB plan apparatus. (Emphasis in original.)
>
> Separate accounts require substantial minimum investments of $15 million to $25 million per account.  However, large plans

14

with total assets over $500 million, can realize substantial savings through such instruments.    Total investment management expenses can commonly be reduced to one-fourth of the expenses incurred through retail mutual funds (Rogers Casey).

53.      Separate accounts offer various benefits such as the ability of the Plan sponsor to negotiate fees, directly control investment guidelines, and to avoid paying marketing costs which are included in the cost of mutual funds, and not having to hold large amounts of cash for shareholder redemptions.  (Large amounts of cash are not needed since 401(k) investors do not redeem their investments as often as non 401(k) investors.)

54.      Nordstrom failed to take advantage of this lower cost alternative when it invested in funds such as the Dodge and Cox fund which is a retail mutual fund requiring a minimum investment of only $2,500.

### Excessive fees relative to collective investment trusts

55.      Collective investment trusts provide yet another much lower cost investment option for Plan holdings.  They are pooled tax exempt investment vehicles which are available for 401(k) plans and are cheaper than mutual funds.

56.      While a few of the Plan's holdings were in collective trusts, the Plan failed to utilize this much cheaper option with respect to the $1.1 billion in Nordstrom Target Retirement Funds.   These Funds averaged operating expenses of 42 basis points.  Vanguard offers an array of Target Retirement Trusts with target dates ranging from 2010 to 2060.  These Collective Target Date Trusts were introduced with fees as low as 7 to 8.25 basis points.  The Nordstrom Target Retirement funds are five times as expensive, costing the Plan an extra 34 basis points.  On $1.1 billion in holdings, this amounts to an extra $3.74 million in excessive fees a year or $22.4 million over 6 years.

## CLASS ACTION ALLEGATIONS

57.    Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(1), or, in the alternative, 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of similarly situated persons (the Class):

> All participants in and beneficiaries of the Nordstrom Retirement Plan for the period from six years before the filing of this action until the time of trial (the Class Period).

58.    The members of the class are so numerous that joinder of all members is impracticable.  At all relevant times, the numbers of class members were fifty thousand or more.

59.    Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class. Among such questions are:

> i.    Whether Nordstrom and the Retirement Committee failed in their fiduciary duties with respect to the administration, management and supervision of recordkeeping and bookkeeping providers;
>
> ii.   Whether Defendants failed in their fiduciary duties to act as prudent financial managers and to minimize plan administrative fees and investment option operating expenses;
>
> iii.  Whether the operating expenses charged, collected and negotiated in connection with the Plan investment options were reasonable;
>
> iv.   Whether the annual notices on fees made adequate disclosure; and,

> v.  Whether Defendants' breaches of fiduciary duties caused losses
> to the Plan and its participants, and if so, in what amount.

60.     There are no substantial individual questions among Class members on the merits of this action.

61.     Plaintiff's claims are typical of the members of the Class.

62.     Plaintiff has been injured by the alleged breaches of fiduciary duties and is committed to fairly, adequately and vigorously representing and protecting the interests of Class members.

63.      Nordstrom may contend that this class action is precluded by its Dispute Resolution Program which requires employees to arbitrate various matters. However, in a recent ERISA decision, *Munro v. University of Southern California*, 2017 WL 1654075 (C.D. Cal. March 23, 2017), this issue was squarely decided in favor of the employee and against the employer who wanted to force arbitration. The court denied a motion to compel arbitration.  It held that the ERISA class action was being brought on behalf of the plan, and that the plan was not party to any arbitration agreement.

64.     Plaintiff has retained counsel who are experienced in class action litigation.

65.     Neither Plaintiff, nor her counsel, have any interests that would cause them to refrain from vigorously pursuing this action.

66.     Plaintiff is an adequate class representative.

67.     Class certification of Plaintiff's claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Nordstrom, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

17

68.     In the alternative, class certification is also appropriate under Fed. R. Civ. Pro. 23(b)(3) because common issues of law and fact predominate over questions affecting only individual members of the Class.

69.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.   Nordstrom has injured Plaintiff and the members of the Class by diminishing their investment returns.  The diminution of returns and excessive fees are relatively small for each individual, but large in the aggregate.   Individual participants have an insufficient stake in the outcome of this matter to devote substantial resources to pursue it so only through a class action mechanism can their claims be effectively pursued.

70.     On information and belief, the names and addresses of all Class members are available through Defendants, and adequate notice can be provided to Class members as required by Fed. R. Civ. Pro. 23.

## COUNT ONE

**Breach of Fiduciary Duties Under ERISA Due to Failure to Ensure and Maintain Reasonable Investment Management Fees for Fund Investments**

71.     Plaintiff incorporates each of the preceding paragraphs as if set forth fully herein.

72.      Defendant Nordstrom and the Retirement Committee failed to ensure that annual operating fees of the holdings in the Plan were reasonable for a plan of its size and failed to take advantage of cost cutting alternatives that would have been dramatically cheaper.

73.      Nordstrom and the Retirement Committee had a fiduciary duty to manage the Plan for the sole and exclusive benefit of the Plan participants and beneficiaries, and to act with the care, skill, diligence and prudence demanded by

18

ERISA. Nordstrom and the Retirement Committee are responsible for ensuring that operating expenses of Plan investments are reasonable, to select prudent cost-effective investment options, to evaluate and monitor the investments on an ongoing basis, to eliminate imprudent investments, and to take all necessary steps to ensure that the Plan's assets are invested prudently.

74.      The message of the U.S. Supreme Court in Tibble, supra, was loud and clear: ERISA's "duty of prudence involves a continuing duty to monitor investments and remove imprudent ones[.]" 135 S. Ct. at 1829.

75.      Nordstrom and the Retirement Committee selected and retained Plan investment options with excessively high fees relative to lower cost funds of the same category and similar performance records, separate accounts, and collective trusts, all of which were readily available to this large Plan.

76.      Nordstrom and the Retirement Committee failed to discharge their duties with the care, skill and prudence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

77.      Further, Defendants  employed a flawed selection process for selecting and retaining investments.

78.      Defendants thereby breached their fiduciary duties under 29 U.S.C. §1104(a)(1)(B).

## COUNT TWO

**Breach of Fiduciary Duties Under ERISA Due to Failure to Ensure and Maintain Reasonable Administrative, Record Keeping and Bookkeeping Fees**

79.      Plaintiff incorporates each of the preceding paragraphs as if set forth fully herein.

80.     Defendant Nordstrom and the Retirement Committee failed to ensure that administrative, record keeping and book keeping fees of the Plan were reasonable for a plan of its size.

81.     Nordstrom and the Retirement Committee had a fiduciary duty to manage the Plan for the sole and exclusive benefit of the Plan participants and beneficiaries, and to act with the care, skill, diligence and prudence demanded by ERISA.  Nordstrom and the Retirement Committee are responsible for ensuring that administrative, book keeping and record keeping expenses of the Plan investments are reasonable.

82.     Nordstrom and the Retirement Committee selected and retained Plan administrative service providers with excessively high fees relative to other options for a plan of this size.

83.     Nordstrom and the Retirement Committee thereby failed to discharge their duties with the care, skill and prudence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

84.     Further, Defendants   employed a flawed selection process for selecting and retaining administrative service providers.

85.     Defendants thereby breached their fiduciary duties under 29 U.S.C. §1104(a)(1)(B).

## COUNT THREE

### Breach of Fiduciary Duties Under ERISA Due to Failure to Adequately Disclose Administrative, Record Keeping and Book keeping Fees

86.     Defendants had a fiduciary duty to adequately disclose Plan administrative fees and expenses to Plan participants.

87.    Defendants breached this duty by supplying Plan participants with an annual fee notice that failed to tell them how much was being deducted in administrative fees from their accounts.

88.    The annual notice also failed to adequately disclose whether revenue sharing was taking place, how much was being paid in revenue sharing, and whether the amount being paid in revenue sharing was reasonable in relation to administrative, book keeping and record keeping costs being incurred by the Plan.

89.    Nordstrom and the Retirement Committee thereby failed to discharge their duties with the care, skill and prudence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

90.    Defendants thereby breached their fiduciary duties under ERISA.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment as follows:

A. Certify this action as a class action and appoint Plaintiff's counsel as class counsel pursuant to F. R. Civ. Pro.23;

B. Declare that Defendants have breached their fiduciary duties to the Class;

C. Enjoin Defendants from further violations of their fiduciary responsibilities, duties and obligations under ERISA;

D. Require that Defendants provide enhanced disclosures regarding revenue sharing;

E. Order that Defendants make good to the Plan all losses resulting from their breaches of fiduciary duties;

F. Order that Defendants disgorge any profits that they have made through their breaches of fiduciary duties;

PLAINTIFF'S CLASS ACTION COMPLAINT

G. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. 1132(g), and/or for the benefit obtained for the common fund;

H. Order Defendants to pay pre-judgment interest; and,

I. Award such other and further relief as the Court deems just.

Dated this 6th day of November, 2017.

Plaintiff,

By:  Howard B. Prossnitz, Esq. /s/
pro hac vice application to be filed

LAW OFFICES OF HOWARD PROSSNITZ
203 Forest Avenue
Oak Park, IL 60302
Telephone:  (708) 203-5747
prossnitzlaw@gmail.com

By:  Shoham J. Soloui, Esq.  /s/

Grant J. Savoy, Esq.
Shoham J. Solouki, Esq.
SOLOUKI | SAVOY, LLP.
316 West 2nd Street
Los Angeles, CA 90012
Telephone: (213) 814-4940
Facsimile: (213) 814-2550
grant@soloukisavoy.com
shoham@soloukisavoy.com